UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
-----------------------------------x
CENDANT CORPORATION,                :
                                    :
     Plaintiff,                     :
                                    :
v.                                  :   Civ. No. 3:06CV00854 (AWT)
                                    :
E. KIRK SHELTON, AMY M. SHELTON     :
and ROBIN D. JACKSON, TRUSTEE of    :
THE SHELTON CHILDREN IRREVOCABLE    :
TRUST,                              :
                                    :
     Defendants.                    :
-----------------------------------x
```

### RULING ON MOTION TO DISMISS

Cendant Corporation ("Cendant") bring this action against E. Kirk Shelton ("Kirk Shelton"), Amy M. Shelton ("Amy Shelton"), and Robin D. Jackson (the "Trustee"), Trustee of the Shelton Children Irrevocable Trust (the "Trust"). Defendant Amy Shelton has moved to dismiss the five counts of the Complaint in which she is named. For the reasons set forth below, her motion is being denied.

### I. FACTUAL ALLEGATIONS

Kirk Shelton, as an executive at CUC International and later Cendant, participated in a financial fraud which began in the 1980s and was eventually discovered in 1998, the year in which Kirk Shelton's employment was terminated. On January 4, 2005, Kirk Shelton was convicted after trial in a criminal case, <u>United States of America v. Walter A. Forbes and E. Kirk Shelton</u>, 3:02CR00264(AWT). On August 12, 2005, the court entered a Restitution Order in the amount of $3.275 billion in favor of

Cendant.  The amount stated in the Restitution Order remains due and owing to Cendant.

In December 1988, Kirk Shelton and Amy Shelton acquired property at 573 Middlesex Road in Darien, Connecticut (the "Residence") by a deed which conveyed a half interest to each of Kirk Shelton and Amy Shelton.  On February 4, 1993, Kirk Shelton transferred his half interest in the Residence to Amy Shelton by quitclaim deed without receiving any consideration from her.  Kirk Shelton retained full use and enjoyment of the Residence and the transfer was made in large measure because of the risk posed by Kirk Shelton's illegal actions as an officer of CUC and his concerns over discovery of them.

In 1997, Kirk Shelton and Amy Shelton acquired a condominium in Vail, Colorado (the "Vail Property").  On September 9, 2005, Kirk Shelton and Amy Shelton transferred their interests in the Vail Property to Amy Shelton as to an undivided 50 percent interest and the Trustee as to an undivided 50 percent interest.  Kirk Shelton did not receive adequate consideration for the transfer and he remained in actual possession and/or control of his half interest in the Vail Property.  Furthermore, Kirk Shelton continued to receive rental income from the property after the transfer.

In connection with Kirk Shelton's criminal case, the court awarded Kirk Shelton a monthly allowance of $45,000.  Between September 1, 2005 and January 31, 2006, having previously quitclaimed his half interest in the Residence to Amy Shelton

because of his concerns about discovery of his illegal actions at CUC while retaining full use and enjoyment of the Residence, Kirk Shelton transferred amounts for home repairs/yard work and utilities, for other household expenses, and for property taxes for the Residence.  Because Kirk Shelton had remained in actual possession of the Residence, he benefitted from the payments after the transfer.

The Complaint sets forth ten claims for relief, five of which are asserted against Amy Shelton.  In the Third Count, the plaintiff brings a claim against the defendants in connection with Kirk Shelton's alleged intentional fraudulent transfer of his interest in the Vail Property.  In the Fourth Count, the plaintiff brings a claim against the defendants in connection with Kirk Shelton's alleged constructive fraudulent transfer of his interest in the Vail Property.  In the Fifth Count, the plaintiff claims that Amy Shelton has been unjustly enriched by Kirk Shelton's transfer of his interest in the Residence and seeks the imposition of a constructive trust against Amy Shelton. In the Sixth Count, the plaintiff brings a claim against Kirk Shelton and Amy Shelton in connection with Kirk Shelton's alleged intentional fraudulent transfer of certain amounts for home repairs/yard work and utilities, other household expenses and property taxes for the Residence.  In the Seventh Count, the plaintiff brings a claim against Kirk Shelton and Amy Shelton in connection with Kirk Shelton's alleged constructive fraudulent transfer of certain amounts for home repairs/yard work and

utilities, other household expenses and property taxes for the Residence. In the Third, Fourth, Sixth and Seventh Counts the plaintiff asserts its claim against Amy Shelton as a transferee, participant and beneficiary.

## II. LEGAL STANDARD

When deciding a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). A complaint "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). See also Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984). "The function of a motion to dismiss is 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" Mytych v. May Dept. Store Co., 34 F.Supp. 2d 130, 131 (D. Conn. 1999), quoting Ryder Energy Distribution v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984). "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims." United States v. Yale New Haven Hosp., 727 F. Supp 784, 786 (D.Conn. 1990) (citing Scheuer, 416 U.S. at 232).

## III. DISCUSSION

Amy Shelton makes five arguments in support of her motion:

4

(1) that the Third, Fourth, Sixth and Seventh Counts should be dismissed for failure to comply with Fed. R. Civ. P. 9(b); (2) that the Third and Fourth Counts should be dismissed because the transfer of the Vail Property was not a fraudulent transfer; (3) that there was no transfer from Kirk Shelton to Amy Shelton in connection with the payments of the expenses described in the Sixth and Seventh Counts; (4) that the cause of action set forth in the Fifth Count is an action for constructive trust and there is no independent action for constructive trust; and (5) that the Fifth Count is barred by the statute of limitations.

Also, Amy Shelton argues that Colorado law applies to the Third and Fourth Counts. Cendant assumes <u>arguendo</u> for purposes of the instant motion that it does, and, for purposes of the instant motion, the court applies Colorado law to the Third and Fourth Counts. It appears to be undisputed that Connecticut law applies to the Fifth, Sixth, and Seventh Counts.

**A. Fed. R. Civ. P. 9(b)**

Amy Shelton contends that the Third, Fourth, Sixth, and Seventh Counts fail to comply with Fed. R. Civ. P. 9(b) and therefore must be dismissed. Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b).

Courts have not applied Rule 9(b) to claims of constructive, rather than actual, fraud. <u>See, e.g.</u>, <u>Infra-Metals Co. v. Topper & Griggs Group, Inc., et al.</u>, No. Civ.A. 3:05-CV-559, 2005 WL

5

3211385, at *3 (D. Conn. Nov. 30, 2005) (analyzing sufficiency of pleadings for actual and constructive fraud separately and applying Rule 9(b) analysis only to actual fraud Conn. Gen. Stat. § 52-552e(a)(1) claim); Sullivan v. Kodsi, 373 F.Supp.2d 302, 307 (S.D.N.Y. 2005) (examining claims for constructive fraud under a New York statute which does not require "actual intent," but only that a conveyance be made "by a person who is or will be thereby rendered insolvent," and explaining that "[c]laims of constructive fraud do not need to meet the heightened pleading requirements of Fed. R. Civ. P. 9(b)"). The Fourth Count and the Seventh Count are based on a theory of constructive fraudulent transfer. Because Fed. R. Civ. P. 9(b) is inapplicable to such claims, the defendant's motion to dismiss these claims on this ground is being denied.

In the Third Count[1] and the Sixth Count[2], the plaintiff sets forth intentional fraudulent transfer claims. Courts have held that such claims are subject to Fed. R. Civ. P. 9(b). However, courts have not, as Amy Shelton suggests[3], applied Rule 9(b) to

---

[1] "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." Colo. Rev. Stat. Ann. § 38-8-105(1)(a).

[2] The Connecticut statute contains identical language. See Conn. Gen. Stat. § 52-552e(a)(1).

[3] Defendant Amy Shelton points to Master-Halco, Inc. v. Picard, No. 3:04-CV-131(RNC), 2004 WL 1897015 (D. Conn. Aug. 18,

6

require that the plaintiff in a fraudulent transfer action meet the standard articulated in Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994) in fraudulent transfer actions. Rather, "[a] plaintiff alleging a fraudulent conveyance is required to plead only the requisite mental state with particularity." Nat'l Council on Compensation Ins. Inc. et al. v. Caro & Graifman, P.C., and Joseph Gall, 259 F.Supp.2d 172, 179 (D. Conn. 2003). "Conclusory allegations of scienter are sufficient 'if supported by facts giving rise to a 'strong inference' of fraudulent intent.'" Id. (citation omitted). Furthermore, "[a]ctual fraudulent intent may be inferred from the circumstances surrounding the transaction, including the relationship among the parties and the secrecy, haste, or unusual nature of the transaction." Id. In Caro & Graifman, the court found that the plaintiffs had sufficiently pled a fraudulent conveyance where the complaint stated that the mortgage note at issue was executed the day before a party gave his financial statement to the court, even though a restitution order forbid him from liquidating, transferring, or alienating any assets. Id. The court explained, "[i]f the plaintiffs can prove that

---

2004) as authority for the proposition that Rule 9(b) is applied to fraudulent transfer claims, but that opinion does not indicate that Rule 9(b) applies identically to fraudulent transfers and false representations or negligent misrepresentations. Rather, the court in Master-Halco cites to Atlanta Shipping Corp. v. Chemical Bank, 818 F.2d 240, 251 (2d Cir. 1987), which stated that "allegations of violating [New York fraudulent conveyance law] must plead the requisite mental state with particularity." (emphasis added).

7

these allegations are true, the defendants' actions would constitute a clear attempt to circumvent the court's Restitution Order." Id. Similarly, in In re Sharp Intern. Corp., the court noted that because it is difficult to demonstrate the requisite intent, "the pleader may rely on 'badges of fraud' to support his case, i.e., circumstances so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent." 403 F.3d 43, 56 (2d Cir. 2005) (citation omitted).

In the Third Count, the plaintiff identified the date of the transaction and the parties to the transaction, and it made specific factual allegations that give rise to a strong inference of fraudulent intent. The plaintiff alleged that Kirk Shelton was subject to the Restitution Order, that the other parties to the transaction were insiders, and that after the transfer, Kirk Shelton continued to possess and control his transferred interest in the Vail Property as well as receive rental income from the property. In the Sixth Count, the plaintiff identified sums transferred for payment of certain categories of expenses related to the Residence and other household expenses. It also made specific factual allegations that give rise to a strong inference of fraudulent intent. The plaintiff alleges that Kirk Shelton and Amy Shelton acquired the Residence in December 1988 by a deed conveying a one-half interest in the Residence to each of them; that it was solely income and money earned by Kirk Shelton while an officer at CUC that were used for acquisition of the Residence and subsequently for the upkeep, and maintenance and improvement

of the Residence; that in February 1993 Kirk Shelton quitclaimed his one-half interest in the Residence to Amy Shelton without any consideration from her; that at the time Kirk Shelton made the transfer, he was perpetrating a financial fraud at CUC and caused the Residence to be placed solely in the name of Amy Shelton because of the risk posed by his illegal actions at CUC and his concerns over discovery of those actions; that Kirk Shelton has retained and enjoyed all attributes of ownership of the Residence except for legal title; that the structure of Kirk Shelton's and Amy Shelton's legal affairs was designed deliberately to shield the Residence from creditors who might make a claim against Kirk Shelton based on his illegal acts at CUC and Cendant; and that at the time of the transfer, the Restitution Order was in effect. Thus, the court concludes that the requirements of Rule 9(b) have been satisfied with respect to each of the Third and Sixth Counts.

### B. Transfer of the Vail Property

Amy Shelton contends that the Third and Fourth Counts must be dismissed because the transfer of the Vail Property was not a fraudulent transfer. Specifically, she argues that under Colorado law, fraudulent transfer claims are purely equitable in nature and equity looks at substance rather than form; that, looking at the substance of the transaction, as to Amy Shelton there has been no transfer whatsoever because she had a 50% interest in the Vail Property before that transaction and retains a 50% interest in that condominium; and that, therefore, viewing

the entire transaction as a whole, there is no basis for claiming that Amy Shelton was a fraudulent transferee.

As an initial matter, Amy Shelton's characterization of Colorado law as to fraudulent transfer claims being purely equitable in nature is not accurate. As noted by the plaintiff, "[the Colorado Uniform Fraudulent Transfer Act] is based on the Uniform Fraudulent Transfer Act (UFTA), which in turn was derived from the Uniform Fraudulent Conveyance Act." Leverage Leasing Company v. Smith, No. 05CA0432, 2006 Colo. App. LEXIS 1286, at *4 (Aug. 10, 2006). Thus, Colorado fraudulent transfer cases are not exclusively equitable in nature.

Additionally, Amy Shelton does not argue that Kirk Shelton did not engage in a fraudulent transfer. Rather, her only argument is that there is no basis for claiming that she was a fraudulent transferee. However, taking the allegations of the Complaint as true, both the Third Count and the Fourth Count allege that in a transaction in which Kirk Shelton was a transferor, Amy Shelton was a transferee to the extent of an undivided 50 percent interest and also allege facts that would support a conclusion that Kirk Shelton engaged in a fraudulent transfer. Thus, based on the allegations in the Complaint, there is a basis for a conclusion that Amy Shelton was a fraudulent transferee, and those allegations do not require the conclusion that she is shielded from the plaintiff's claim by Colo. Rev. Stat. Ann. § 38-8-109. Finally, Amy Shelton's contention that with respect to her, "there has been no transfer whatsoever"

(Doc. No. 35, at 7) simply ignores the factual allegations in the Complaint, which she is not entitled to do in connection with the instant motion.

### C. Payments of Expenses Related to the Residence and Other Household Expenses

Amy Shelton contends that the Sixth and Seventh Counts must be dismissed because the allegations in those counts concern payments of expenses related to the Residence and other household expenses from a joint account of Kirk Shelton and Amy Shelton; and that because Amy Shelton has the same right and access to the joint account as Kirk Shelton, there has been no transfer from Kirk Shelton to Amy Shelton.

As an initial matter, Amy Shelton's argument fails because the allegations in the Complaint make no reference to payments being made out of a joint account. In addition, even assuming arguendo that the payments for the expenses described were made by withdrawing money from such a joint account, the Complaint cannot be construed, under the applicable legal standard, as alleging that the transfer was accomplished solely by means of removing funds from any such joint account or accounts. Furthermore, the fact that funds were placed in a joint account does not shield Amy Shelton from liability as a transferee. See, e.g., The Cadle Company v. Jones and Murren, Nos. 3:00cv316(WWE)(LEAD), 3:00cv317(WWE), 2004 U.S. Dist. LEXIS 18300, at *18 (D. Conn. Aug. 20, 2004) (finding debtor's wife liable pursuant to Conn. Gen. Stat. § 52-552e when, each week,

11

she removed her husband's paychecks from their joint account, into which they had been deposited, to an account solely in her name, because while the debtor's wife had equal access to the joint account, removal of funds to hinder, delay, or defraud a creditor was not permissible).

**D. The Residence**

    **1. <u>Cause of Action</u>**

Amy Shelton correctly argues that there is no separate cause of action under Connecticut law for constructive trust, but rather a constructive trust is a remedial device designed to prevent unjust enrichment. See <u>Giulietti v. Giulietti</u>, 65 Conn. App. 813, 856 (2001) (citation omitted) ("[t]he imposition of a constructive trust by equity is a remedial device designed to prevent unjust enrichment"); see also <u>Macomber v. Travelers Property and Cas. Corp.</u>, 261 Conn. 620, 623 n. 3 (2002) (explaining that a constructive trust is not a substantive cause of action, but a remedy). Amy Shelton then argues that the Fifth Count must be dismissed because it does not state a claim for unjust enrichment, but simply seeks the imposition of a constructive trust without alleging a separate cause of action. However, notwithstanding the language in the caption for the Fifth Count, a review of the allegations in the Fifth Count makes it clear that the plaintiff is claiming that Amy Shelton has been unjustly enriched to its detriment and seeks, as a remedy, the imposition of a constructive trust against her. (<u>See</u> Complaint, at ¶¶ 62-64).

## 2. **Statute of Limitations**

Amy Shelton contends that the Fifth Count is barred by the statute of limitations. As discussed above, the Fifth Count sets forth a cause of action for unjust enrichment, which is an equitable cause of action. In <u>Dunham v. Dunham</u>, the Connecticut Supreme Court discussed at length the principles that govern application of statutes of limitation to equitable causes of action:

> The defendant maintains, finally, that the action on the first count is barred by the statute of limitations. He acknowledges that the first count is an equitable action seeking relief from a probate decree. He argues, however, that because the plaintiff prevailed on his underlying claim for breach of a fiduciary or confidential relationship, a cause of action which sounds in tort,[4] the three year statute of limitations set forth in General Statutes § 52-577 applies. The plaintiff signed the disputed waiver on October 31, 1978, but did not file this action until November 3, 1982. According to the defendant, because the plaintiff did not bring the action 'within three years from the date of the act or omission complained of,' the action is now time barred. General Statutes § 52-577.
>
> The fallacy in the defendant's argument is his assumption that a court, acting under its equitable powers, is bound to apply the statute of limitations that governs the underlying cause of action. In fact, in an equitable proceeding, a court may provide a remedy even though the governing statute of limitations has expired, just as it has discretion to dismiss for laches an action initiated within the period of the statute. <u>Lesser v. Lesser</u>, 134 Conn. 418, 422-23, 58 A.2d 512 (1948); <u>Nichols v. Nichols</u>, 79 Conn. 644, 656-57, 66 A. 161

---

[4] The defendant's reference to the "cause of action which sounds in tort" appears to refer to the factual basis for the three claims in the plaintiff's complaint. The first count, on which the plaintiff prevailed, was solely an equitable cause of action.

13

(1907); Jeffery v. Fitch, 46 Conn. 601, 605 (1879). Although courts in equitable proceedings often look by analogy to the statute of limitations to determine whether, in the interests of justice, a particular action should be heard, they are by no means obliged to adhere to those time limitations. Lesser v. Lesser, supra, 134 Conn. at 422, 58 A.2d 512; Nichols v. Nichols, supra, 79 Conn. at 657; Jeffery v. Fitch, supra.

> A party may, however, be barred from seeking equitable relief by the defense of laches, which applies only if there has been an unreasonable, inexcusable and prejudicial delay in bringing suit. Cummings v. Tripp, 204 Conn. 67, 88, 527 A.2d 230 (1987); Schomer v. Shilepsky, 169 Conn. 186, 194, 363 A.2d 128 (1975); Robinson v. Myers, 156 Conn. 510, 519, 244 A.2d 385 (1968). 'A conclusion that a plaintiff has [not] been guilty of laches is one of fact for the trier and not one that can be made by this court, unless the subordinate facts found make such a conclusion inevitable as a matter of law.' Papcun v. Papcun, 181 Conn. 618, 621, 436 A.2d 282 (1980); Cummings v. Tripp, supra. In this case, the jury specifically found, by way of its response to the third interrogatory, that the plaintiff was not guilty of laches, and the record adequately supports the jury's conclusion.

204 Conn. 303, 326-327 (1987).

Amy Shelton relies on Gager v. Sanger, 95 Conn. App. 632 (2006), where the court stated that "[w]here a party seeks equitable relief pursuant to a cause of action that would allow that party to seek legal relief, concurrent legal and equitable jurisdiction exists, and the statute of limitations that would be applicable to bar the legal claim also applies to bar the equitable claim." Id. at 641-42 (quoting Dowling v. Finley Associates, Inc., 49 Conn. App. 330, 335 (1998)). In Gager, the plaintiff relied on Dunham v. Dunham in arguing that "equity mandate[d] that any statute of limitations period applicable to

14

the implied trust claims be equitably tolled." 95 Conn. App. at 641. The court in Gager rejected this argument, noting that "[t]he absence of an obligation enunciated by our Supreme Court in Dunham, however, does not imply that a court cannot apply the statute of limitations of the legal claim to the equitable claim." Id. at 641. The court then went on to state the language upon which Amy Shelton principally relies, which is quoted from Dowling. In Dowling, the court explained, in applying the principle relied upon by Amy Shelton that, "[i]n the present case, the underlying cause of action on which the plaintiffs seek equitable redress is an alleged violation of [the Connecticut Uniform Securities Act, Conn. Gen. Stat. § 36-470 et seq.]. This cause of action affords both legal and equitable relief. General Statutes §36b-29(a). As noted, equity follows the law under these circumstances." 49 Conn. App. 330, 335 (1998).

Here, by way of contrast, the Fifth Count sets forth a cause of action that affords purely equitable relief. Thus, the general principles stated in Dunham v. Dunham apply and, this is a case in which the court must "determine whether, in the interests of justice, a particular action should be heard." Dunham, 204 Conn. at 326-27. The court notes that in any event, to the extent that Gager is inconsistent with Dunham, Dunham controls. Accordingly, based on the parties' submissions in

15

connection with the instant motion, the court cannot conclude that this claim should be barred by the statute of limitations set forth in Conn. Gen. Stat. § 52-552j.

**IV. CONCLUSION**

For the reasons set forth above, defendant Amy Shelton's Motion to Dismiss (Doc. No. 35) is hereby DENIED.

It is so ordered.

Dated this 7th day of February 2007 at Hartford, Connecticut.

/s/AWT<br>Alvin W. Thompson<br>United States District Judge