IN THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CENDANT CORPORATION

    Plaintiff,                                       CASE NO: 3:06cv0854 (JCH)

v.

E. KIRK SHELTON, AMY M. SHELTON, and
ROBIN D. JACKSON, TRUSTEE OF THE
SHELTON CHILDREN IRREVOCABLE TRUST

    Defendants.                                  MARCH 14, 2007

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
PURSUANT TO FED. R. CIV. PROC. 12(B)(1) & 12(B)(6)**

Pursuant to Fed. R. Civ. Proc. 12 (b) (1) & (b)(6), defendant Robin D. Jackson, Trustee of the Shelton Children Irrevocable Trust, hereby submits this memorandum of law in support of his motion to dismiss the First, Second, Third, Fourth, Eighth, Ninth And Tenth Counts of the Plaintiff's June 2, 2006 Complaint in their entirety.

**FACTS AND PROCEDURAL HISTORY**

In *United States v. Shelton*, 3:02-CR-264, a jury convicted defendant E. Kirk Shelton on multiple felony charges in 2005. The Court presided over the trial, which spanned some 10 months and included a significant amount of testimony by Mr. Shelton. The Court (Thompson, J.) thereafter ordered what is

one of the single largest restitution orders ever levied against an individual. On August 12, 2005, the Court entered an order of restitution in the amount of $3.275 billion in favor of Cendant Corporation. Complaint, ¶ 12.

On or about June 2, 2006, Cendant Corporation commenced the present action seeking, *inter alia*, to set aside certain alleged fraudulent transfers by Shelton and to impose money judgments against all fraudulent transferees. Cendant's fraudulent transfer claims against defendant Jackson are brought pursuant to the Connecticut Uniform Fraudulent Transfer Act, Conn. Gen. Stat. § 52-552 *et seq.*

I.  **STANDARD OF REVIEW**

A.  Fed. R. Civ. Proc. 12(b)(1)

"A court may dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) when it lacks the statutory or constitutional power to adjudicate it. See, e.g., *Luckett v. Bure*, 290 F.3d 493, 496-97 (2d Cir. 2002). 'The plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.' Id. (internal quotations omitted). Ripeness and standing are both properly considered on a Rule 12(b)(1) motion. See *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003) (discussing 12(b)(6) and12(b)(1); *Auerbach v. Board of Educ.*, 136 F.3d 104, 108-09 (2d

Cir.1998); *Thompson v. County of Franklin*, 15 F.3d 245, 248 (2d Cir. 1994). "In resolving the question of jurisdiction, the district court can refer to evidence outside the pleadings.' *Luckett*, 290 F.3d at 496-97." *Student Members of SAME v. Rumsfeld*, 321 F. Supp. 2d 388, 392 (D. Conn. 2004)

In order to have constitutional standing to pursue a claim, a plaintiff must demonstrate: (1) an injury in fact; (2) caused by the conduct complained of; (3) and that such injury is likely to be redressed by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 119 L. Ed. 2d 351, 112 S. Ct. 2130 (1992); see also *Lerman v. Board of Elections*, 232 F.3d 135, 142 (2d Cir. 2000).

When standing is raised at the pleading stage, it is "subject to the same degree of proof that governs other contested factual issues." *Baur v. Veneman*, 352 F.3d 625, 632 (2d Cir. 2003); see also *Lujan*, 504 U.S. at 566 (allegation of injury may be sufficient to survive a motion to dismiss, even if, on a motion for summary judgment, the facts do not exist to support the allegation); *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26 n.25, 48 L. Ed. 2d 450, 96 S. Ct. 1917 (1976) (same); cf. *In Re Bennett Funding Group*, 336 F.3d 94, 102 (2d Cir. 2003) (denial of motion to dismiss based on standing does not preclude raising the issue again at the summary judgment stage).

B.      Fed. R. Civ. Proc. 12(b)(6)

In considering a motion to dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6), a court must accept the allegations of the complaint as true. *Wilson-Coker v. Thompson*, 222 F. Supp. 2d 190, 195 (D. Conn. 2002). The court may consider only those facts alleged in the pleadings, documents attached thereto as exhibits or incorporated by reference, and matters of which judicial notice may be taken. *Id.,* citing *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993). Although a court must draw all inferences in favor of the plaintiff, a motion to dismiss should be granted where it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief. *Id.;* see also *Hasvold v. First U.S. Bank, N.A.*, 194 F. Supp. 2d 1228 (D. Wyo. 2002). Finally, although the court takes as true all well-pled allegations, "Rule 12(b)(6) does not permit the substitution of conclusory statements for minimally sufficient allegations." *Whitaker v. Haynes Constr. Co., Inc.*, 167 F. Supp. 2d 251, 254 (D. Conn. 2001) (citing *Furlong v. Long Island Coll. Hosp.*, 710 F.2d 922, 9772 (2d. Cir. 1983)).

II. **ARGUMENT**[1]

A. <u>CENDANT LACKS STANDING TO BRING A CLAIM UNDER THE CONNECTICUT UNIFORM FRAUDULENT TRANSFER ACT AS TO THE FIRST, SECOND, THIRD, FOURTH, EIGHTH, NINTH AND TENTH COUNTS</u>

Whether a party has standing in the federal courts is considered within the framework of Article III, Section 2, cl.1 of the United States Constitution, that extends federal judicial power to all "cases" and "controversies," and which first asks whether the challenged action has caused a plaintiff an injury in fact. See *Association of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 151-

---

[1] Defendant Jackson asserted the defense of lack of standing in connection with the Plaintiff's Application for Ex Parte Prejudgment Remedy, which defense was rejected by the Court. See Docket #109. Plaintiff's counsel has indicated his belief that the decision on the question of standing is "law of the case" or otherwise has been conclusively determined.

It is important to note that "The adjudication made by the court on the application for a prejudgment remedy is not part of the proceedings ultimately to decide the validity and merits of the plaintiff's cause of action. It is independent of and collateral thereto and primarily designed to forestall any dissipation of assets by the defendant . . . . Prejudgment remedy proceedings . . . are not involved with the adjudication of the merits of the action brought by the plaintiff or with the progress or result of that adjudication." *E. J. Hansen Elevator, Inc. v. Stoll*, 167 Conn. 623, 628-29, 356 A.2d 893 (1975). "Prejudgment remedy proceedings do not address the merits of the action; they concern only whether and to what extent the plaintiff is entitled to have property of the defendant held in the custody of the law pending adjudication of the merits of that action." (Internal quotation marks omitted.) *Tyler v. Schnabel*, 34 Conn. App. 216, 219, 641 A.2d 388 (1994). "In considering an application for a prejudgment remedy, the trial court's function is to determine whether there is probable cause to believe that a judgment will be rendered in favor of the plaintiff in a trial on the merits . . ." *Giordano v. Giordano*, 39 Conn. App. 183, 206, 664 A.2d 1136 (1995). "The hearing in probable cause for the issuance of a prejudgment remedy is not contemplated to be a full scale trial on the merits of the plaintiff's claim." *New England Land Co., Ltd. v. DeMarkey*, 213 Conn. 612, 620, 569 A.2d 1098 (1990).

52, 25 L. Ed. 2d 184, 90 S. Ct. 827 (1970); *Flast v. Cohen*, 392 U.S. 83, 101, 20 L. Ed. 2d 947, 88 S. Ct. 1942 (1968).  A Plaintiff must also show that the injury may fairly be traced to the challenged action of defendant, and that a favorable decision is likely to redress it, see *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 38, 41, 48 L. Ed. 2d 450, 96 S. Ct. 1917 (1976); *Linda R.S. v. Richard D.*, 410 U.S. 614, 618, 35 L. Ed. 2d 536, 93 S. Ct. 1146 (1973). To establish standing a plaintiff must clearly set forth facts to satisfy Article III's requirements.

Cendant claims to be a "creditor" of E. Kirk Shelton "by virtue of, among other things, a certain restitution order entered in the aforementioned criminal action, which restitution order was entered on August 12, 2005 in the amount of $3.275 billion (the "Restitution Order")."[2]  Complaint, para. 12.  As a "creditor", Cendant seeks to enforce the Restitution Order by reclaiming assets formerly owned by Shelton.  Cendant, however, cannot obtain redress because it is not allowed to enforce the Restitution Order in this manner.

The Mandatory Victims Restitution Act of 1996 ("MVRA") modified the restitution provisions of the Victim and Witness Protection Act of 1982

---

[2] Defendant Jackson's Motion for More Definite Statement, seeking clarification of the "among other things" allegation, was denied by the Court (Thompson, J.) on February 7, 2007.  Docket # 34 & 106.

("VWPA"),18 U.S.C. §§ 3363-3364.  Under the MVRA and VWPA, the victim is provided with limited remedies, all of which Cendant has failed to employ.  18 U.S.C. § 3664 (m)(1) provides:

(A)

(i) An order of restitution may be enforced by the United States in the manner provided for in subchapter C of chapter 227 and subchapter B of chapter 229 of this title; or

(ii) by all other available and reasonable means.

(B) At the request of a victim named in a restitution order, the clerk of the court shall issue an abstract of judgment certifying that a judgment has been entered in favor of such victim in the amount specified in the restitution order. Upon registering, recording, docketing, or indexing such abstract in accordance with the rules and requirements relating to judgments of the court of the State where the district court is located, the abstract of judgment shall be a lien on the property of the defendant located in such State in the same manner and to the same extent and under the same conditions as a judgment of a court of general jurisdiction in that State.

Subsection (B) is the <u>only</u> remedy given to a victim under the MVRA and is notably devoid of enforcement language similar to Subsection (A).

Congress enacted the MVRA in 1996. See Pub. L. No. 104-132, Title II, §§ 201-211, 110 Stat. 1214; 18 U.S.C. §§ 3663A-3664 (Supp. II 1996).  The MVRA removed victim discretion to enforce restitution orders as the enforcement of such orders now rests exclusively with the United States.  18 U.S.C. 3664 (m)(1)(A).  Prior to 1996, 18 U.S.C. 3663 and 18 U.S.C. § 3579(h) (repealed 1996) provided that an order of restitution could be enforced "by United States or a victim named in the order to receive the restitution in the same manner as a judgment in a civil action."  Under this statutory scheme, either the United States or the victim could seek to enforce an order of restitution.  As amended the MVRA now specifically provides that an order of restitution is only enforceable by the United States.  In furtherance of these enforcement powers, 18 USC § 3612 (c) mandates that "[t]he Attorney General shall be responsible for collection of an unpaid fine or restitution", including victim restitution.  There is no statutory authority for the victim to enforce a restitution order.

Congress specifically authorized a crime victim to make use of a restitution order in one, and only one, manner --- to convert the restitution order to a civil judgment using procedures enumerated with particularity in the statute.  See 18 U.S.C. § 3664(m)(1)(B).  A victim has no right to enforce a restitution order itself; but rather has a statutory right to convert the restitution order to a

civil judgment. As a statutory right, Cendant can only do what the statute permits. Had Congress intended that a victim be able to enforce the restitution order itself, without converting it to a civil judgment, Congress would have so stated and would not have taken the pains that it did to enact 18 U.S.C. § 3664(m)(1)(B).

Cendant does not have standing to pursue the present fraudulent conveyance action because it does not have statutory authority to enforce the Restitution Order. The question in deciding whether a plaintiff's injury is redressable is not whether a favorable decision is likely but whether a favorable decision likely will redress a plaintiff's injury. See *Bennett v. Spear*, 520 U.S. 154, 167, 137 L. Ed. 2d 281, 117 S. Ct. 1154 (1997). There are instances in which courts have examined the merits of the underlying claim and concluded that the plaintiffs lacked a legally protected interest and therefore lacked standing. See *e.g. Arjay Assocs., Inc. v. Bush*, 891 F.2d 894, 898 (Fed. Cir. 1989) (concluding that the plaintiffs had "no right to conduct foreign commerce in products excluded by Congress" and therefore lacked standing because they had "no right capable of judicial enforcement and have thus suffered no injury capable of judicial redress"); *Hickman v. Block*, 81 F.3d 98, 101 (9th Cir.), cert. denied, 519 U.S. 912 (1996) (holding that because the Second Amendment did not guarantee an individual right to bear arms, plaintiff claimed only a

generalized grievance and did not have standing to bring suit); *Claybrook v. Slater*, 324 U.S. App. D.C. 145, 111 F.3d 904, 907 (D.C. Cir. 1997) ("If the plaintiff's claim has no foundation in law, he has no legally protected interest and thus no standing to sue."). Here, Cendant has no judicially enforceable right to enforce the Restitution Order (other than pursuant to 18 U.S.C. § 3664 (m)(1)(b)) and therefore has suffered no injury capable of judicial redress. Accordingly, the First, Second, Third, Fourth, Eighth, Ninth and Tenth Counts should be dismissed.

B. THE FIRST, SECOND AND TENTH COUNTS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

In the First, Second and Tenth Counts, Cendant claims to be creditor of E. Kirk Shelton "by virtue of, among other things" the restitution order entered in the case of United States of America v. Walter A. Forbes et al, 3:02-CR-00264 (AWT). As Cendant Corporation's entire action sounds in fraudulent conveyance, the basis for Cendant's claim to be "creditor" of E. Kirk Shelton is central.

Connecticut's Uniform Fraudulent Transfer Act, Conn. Gen. Stat. § 52-555e (a) provides in relevant part that:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, <u>if the creditor's claim arose before the transfer was made or the obligation was incurred</u> and if the debtor made the transfer or incurred the obligation: (1) With actual intent to hinder, delay or defraud any creditor of the debtor; or (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction, or (B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due. (Emphasis added.).

Similarly, Conn. Gen. Stat. § 52-552f (a) provides in relevant part:

> A transfer made or obligation incurred by a debtor is fraudulent as to <u>a creditor whose claim arose before the transfer was made or the obligation was incurred</u> if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation. (Emphasis added.)

In order to state a claim under Section 52-552e or 52-552f upon which relief can be granted, therefore, Cendant must allege facts to establish that its "claim arose before the transfer was made or the obligation was incurred".  Cendant cannot state a claim for relief under Section 52-552e or 52-552f if it became a creditor of E. Kirk Shelton after the alleged fraudulent transfer.

In the First and Second Counts, Cendant alleges that Shelton fraudulently transferred $7.5 million to Defendant Jackson on or about January 5, 1999. Complaint, ¶ 18. Cendant alleges that "as a result of, among other things, the Restitution Order" entered on August 12, 2005, it is a creditor of E. Kirk Shelton. Complaint, ¶ 20.[3] This debtor/creditor relationship, however, clearly did not arise prior to the alleged fraudulent transfer on January 5, 1999. As Cendant has failed to allege facts to establish that its "claim arose before the transfer was made or the obligation was incurred", it has failed to state a claim under Section 52-552e or 52-552f upon which relief can be granted.

In the Tenth Count, Cendant alleges that Shelton "transferred sums to the defendant Trustee without receiving adequate consideration in exchange for the transfer". Complaint, ¶ 102. Other than the conclusory "transferred sums" statement, Paragraphs 101 through 102 (including paragraphs 1 through 15, incorporated by reference) contain no allegations of any specific transfer to

---

[3] "Rule 12(b)(6) does not permit the substitution of conclusory statements for minimally sufficient allegations." *Whitaker v. Haynes Constr. Co., Inc.*, 167 F. Supp. 2d 251, 254 (D. Conn. 2001) (citing *Furlong v. Long Island Coll. Hosp.*, 710 F.2d 922, 9772 (2d. Cir. 1983)). As the "among other things" allegation fails to allege any facts to establish an independent debtor/creditor relationship, it should be considered irrelevant and disregarded for the purposes of this motion.

Defendant Jackson. As stated above, "Rule 12(b)(6) does not permit the substitution of conclusory statements for minimally sufficient allegations." *Whitaker v. Haynes Constr. Co., Inc.*, 167 F. Supp. 2d 251, 254 (D. Conn. 2001) (citing *Furlong v. Long Island Coll. Hosp.*, 710 F.2d 922, 9772 (2d. Cir. 1983)). Moreover, on the face of the Complaint, there are no facts alleged to establish that Cendant's "claim arose before the transfer was made or the obligation was incurred." Without any minimally sufficient allegations of transfers, including any indication of the date or amount of the transfer, Cendant has failed to state a claim upon which relief can be granted.

Based on the foregoing, Defendant Jackson respectfully requests that the Court dismiss the First, Second and Tenth Counts for failure to state a claim

upon which relief can be granted.

           DEFENDANT ROBIN D. JACKSON

           TRUSTEE OF THE SHELTON CHILDREN IRREVOCABLE TRUST

By:___/s/_____
    Jeremy A. Mellitz, Esq.
    Federal Bar No. ct09353
    John A. Farnsworth, Esq.
    Federal Bar No ct20705
    His Attorneys
    Withers Bergman, LLP
    157 Church Street, P.O. Box 426
    New Haven, Connecticut  06510
    Telephone: (203) 789-1320
    Facsimile:  (203) 785-8127
    E-mail: jeremy.mellitz@withers.us.com
    John.Farnsworth@withers.us.com

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA<br>                    Plaintiff<br>v.<br><br>SCIP PARTNERS, L.P. ET AL<br>                    Defendant | CASE NO: 06cv1827 (AWT)<br><br><br><br>MARCH 14, 2007 |

### **CERTIFICATE OF SERVICE**

I hereby certify that on the 14TH day of MARCH, 2007, a copy of the foregoing Memorandum in Support of Motion to Dismiss was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/_____
Jeremy A. Mellitz, Esq.
Federal Bar No. ct09353
John A. Farnsworth, Esq.
Federal Bar No ct20705
Its Attorney
Withers Bergman, LLP
157 Church Street, P.O. Box 426
New Haven, Connecticut  06510
Telephone: (203) 789-1320
Facsimile:  (203) 785-8127
E-mail: jeremy.mellitz@withers.us.com
          John.Farnsworth@withers.us.com