UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CENDANT CORPORATION, | : | |
|     Plaintiff, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 3-06-cv-854 (JCH) |
| | : | |
| E. KIRK SHELTON, et al | : | |
|     Defendants. | : | APRIL 27, 2007 |

**AMENDED RULING RE: DEFENDANT ROBIN D. JACKSON'S SECOND MOTION FOR RECUSAL (Doc. No. 101)[1]**

Plaintiff Cendant Corporation ("Cendant") has filed this action challenging several allegedly fraudulent transfers by defendant E. Kirk Shelton to defendants Amy M. Shelton and Robin D. Jackson, Trustee of the Shelton Children Irrevocable Trust. Jackson moves for this court to recuse District Judge Alvin Thompson from presiding over the case, pursuant to 28 U.S.C. § 144 and 28 U.S.C. § 455(a) (Doc. No. 101). For the reasons that follow, Jackson's motion is denied.

**I.  BACKGROUND[2]**

On January 4, 2005, a jury convicted Shelton on each of the twelve felony counts. United States v. Shelton, Dkt. No. 3:02-CR-264 (AWT). Judge Thompson presided over the trial, which lasted approximately ten months and included a significant amount of testimony from Mr. Shelton. On August 12, 2005, Judge Thompson, after finding that Shelton perjured himself, sentenced Shelton to ten years in prison and ordered Shelton to pay restitution in the amount of $3.275 billion to

---

[1]The court issues this Amended Ruling to correct a typographical error in the original Ruling of April 26, 2007.

[2]For the purposes of this Ruling, the court takes judicial notice of all the items Jackson identifies in his Request for Judicial Notice (Doc. No. 154).

Cendant. Cendant filed the ten-count Complaint in this action on June 2, 2006, in an attempt to set aside transfers made by Shelton to Jackson and Mrs. Shelton.

Jackson filed a motion for Judge Thompson to recuse himself on July 27, 2006, pursuant to 28 U.S.C. § 455(a). The basis of Jackson's motion was that a reasonable person might question whether Judge Thompson could preside neutrally over the Cendant matter, given his knowledge of the evidence in the Shelton criminal matter. Judge Thompson denied that motion for recusal on August 18, 2006.

On December 6, 2006, Judge Thompson presided over a hearing in which Cendant sought to obtain a prejudgment remedy ("PJR") against the defendants.[3] Cendant's ex parte application requested a PJR in the amount of $20.5 million or, in the alternative, whatever monetary amount the court deemed appropriate to secure a judgment for Cendant. PJR Ruling at 4 (Doc. No. 109). In several colloquies with counsel, Judge Thompson referenced facts adduced at the Shelton trial that he believed supported Cendant's PJR application. While Judge Thompson suggested on the record that he was inclined to grant Cendant's motion, he did not rule on the matter until February 8, 2007, in a lengthy written decision (Doc. No. 109).

Following the PJR hearing, Jackson again moved for Judge Thompson to recuse himself pursuant to 28 U.S.C. § 455(a) on January 3, 2007 (Doc. No. 101). Jackson

---

[3]It is useful to note that the December 6 PJR hearing was not the parties' first opportunity to address the issues pertinent to Cendant's PJR application. Rather than grant Cendant's application ex parte, Judge Thompson allowed each defendant to file a written opposition to the application. PJR Ruling at 23 (Doc. No. 109). Judge Thompson then held a hearing on the application on August 18, 2006. Id. At both the August 18 and December 6, 2006 PJR hearings, the defendants were allowed to produce evidence and provide oral argument supplementing their written objections. Id.

2

later supplemented this second motion for recusal on March 1, 2007 (Doc. No. 127), to also request recusal under 28 U.S.C. § 144. As explicitly required under section 144,[4] Judge Thompson entered orders transferring the section 144 recusal motion on March 6, 2007 (Doc. Nos. 130, 134), and the case was randomly assigned to the undersigned on the same day.[5] Id. By agreement of the parties and having found that doing so would be appropriate under the circumstances, the court will decide both the section 144 and 455(a) motions in this Ruling.[6]

## II. STANDARDS FOR RECUSAL

Under section 144 of Title 28 to the United States Code, recusal is appropriate if a judge has "a personal bias or prejudice either against [the moving party] or in favor of any adverse party." 28 U.S.C. § 144. Ordinarily, the showing that a judge suffers from

---

[4]When a party moves for recusal pursuant to section 144, the presiding judge "shall proceed no further therein," and another judge must be assigned to decide the matter. 28 U.S.C. § 144.

[5]Jackson also filed a motion for recusal under sections 144 and 455(a) in a separate but related proceeding pending before Judge Thompson, captioned United States v. SCIP Partners, L.P., et al, Dkt. No. 06-cv-1827. On March 6, 2007, Judge Thompson transferred Jackson's Motion for Recusal (Doc. Nos. 130, 134) pursuant to section 144, and SCIP Partners was also assigned to this judicial officer for a decision on recusal. (Doc. Nos. 105, 107).
As the arguments raised in Jackson's motion for recusal in SCIP Partners are substantially identical to those raised in his motion for recusal in Cendant, the court is filing today substantially the same opinion in the SCIP Partners case.

[6]The court notes that the plain language of section 455(a) and Second Circuit precedent express a clear preference that the judge presiding over the case in which the motion is brought decide the motion. 28 U.S.C. § 455(a) (stating that the judge "shall disqualify himself"); In re Drexel Burnham Lambert, Inc., 861 F.2d 1307, 1312 (2d Cir. 1988) ("Discretion is confided in the district judge in the first instance to determine whether to disqualify himself."). Nonetheless, it is a fair inference from Judge Thompson's remarks at the March 6, 2007 hearing on Jackson's motion to transfer that Judge Thompson intended for both the section 144 and section 455(a) motions to be randomly assigned to another judge. See Motion to Transfer Hearing Tr. at 12, 13. The court also credits the parties' assertions, made at the April 18, 2007 oral argument before the undersigned, that Judge Thompson intended to transfer both motions for decision by another judge.

a personal bias "must be based on extrajudicial conduct . . . not conduct which arises in a judicial context." Lewis v. Tuscan Dairy Farms, Inc., 25 F.3d 1138, 1141 (2d Cir. 1994) (quotations and citations omitted).

Section 455(a) of Title 28 instructs that "any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). In deciding whether a judge objectively appears impartial, the test is "what a reasonable person, knowing and understanding all the facts and circumstances, would believe." In re Drexel Burnham Lambert Inc., 861 F.2d 1307, 1309 (2d Cir. 1988).

Under either section 144 or 455(a), "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." Liteky v. United States, 510 U.S. 540, 555 (1994); see also LoCascio v. United States, 473 F.3d 493, 495 (2d Cir. 2007). In addition, where a judge forms an opinion "on the basis of facts introduced or events occurring in the course of . . . prior [judicial] proceedings," a finding of bias is not appropriate "unless [it] display[s] a deep-seated favoritism or antagonism that would make fair judgment impossible." Liteky, 510 U.S. at 555 (1994); see also LoCascio, 473 F.3d at 495 (2d Cir. 2007).

### III. DISCUSSION

In his second motion for recusal, Jackson contends that the December 6, 2006 PJR Hearing was a "watershed event" which established that Judge Thompson is not an impartial and disinterested tribunal as a result of his presiding over the Shelton criminal trial. Jackson Mem. at 6 (Doc. No. 101). Jackson points to a host of comments by Judge Thompson that Jackson argues demonstrate Judge Thompson

4

has already determined that Shelton controls the Trust in question and that fraudulent transfers occurred. After thoroughly examining the PJR hearing transcript, the court concludes that Judge Thompson's actions during the PJR hearing in no way suggest a personal bias on his part, nor do they reasonably call into question his ability to render fair judgment in this matter.

To ensure that the facts relevant to Jackson's motions are considered in the proper context, the court briefly reviews the nature of PJR proceedings. A prejudgment remedy is generally intended to secure the satisfaction of a judgment should the plaintiff prevail. Morris v. Cee Dee, LLC, 90 Conn. App. 403, 412 (2005). Under Connecticut law, a PJR hearing is essentially a probable cause hearing. See Conn. Gen. Stat. § 52-278d (a) (1). All that a judge must find to grant a PJR is that probable cause exists to believe both that a judgment will be rendered, and that the judgment rendered will be in the amount sought. Id.; Kinsale, LLC v. Tombari, 95 Conn. App. 472, 482 (2006). Early in the December 6, 2006 PJR hearing, Judge Thompson expressed his understanding of this standard:

> The question, as I see it, is whether I have enough in the record before me that I'm comfortable making a finding that there's probable cause that the plaintiff is likely to succeed on a particular claim, and whether I also have a basis for concluding what the value of certain property is for purposes of setting an amount for the prejudgment remedy.

PJR Transcript at 15.

Before a PJR may issue, the defendant must be heard with respect to "any defenses, counterclaims or set-offs, claims of exemption and claims of adequate insurance." Conn. Gen. Stat. § 52-278d(a). The record is clear that Judge Thompson provided ample opportunity to the defendants to oppose Cendant's application. See

5

PJR Ruling at 23.

Connecticut courts commonly describe the legal notion of probable cause as "a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it." Orsini v. Tarro, 80 Conn.App. 268, 272 (Conn.App.,2003) (quoting Three S. Development Co. v. Santore, 193 Conn. 174, 175 (1984)) (quotations and citations omitted). Probable cause is properly understood to be "a flexible common sense standard" that is less demanding than standards which require findings to be made based on a preponderance of the evidence or even a likelihood of success. See id.

Keeping these principles in mind greatly simplifies the resolution of Jackson's second motion for recusal, as they tend to belie any claim that Judge Thompson has demonstrated a personal bias. For example, Jackson cites to one place in the PJR transcript in which Judge Thompson states, "But [I have] to tell you, looking at all the things I've seen, it's clear, Mr. Shelton controls the Trust . . . [the Trust] is not an independent entity." PJR Hearing Tr. at 54. According to Jackson, Judge Thompson's comments on the record show that he "has already determined that the Trust is controlled by Mr. Shelton and that fraudulent transfers occurred." Jackson Mem. at 6. However, Jackson's extrapolation ignores the fact that, a few pages earlier in the transcript, Judge Thompson engaged in the following exchange with defense attorney Puccio:

> **Puccio:** If your Honor is moving in the direction of a ruling that that transfer was fraudulent, on behalf of Mr. Shelton I would urge you not to make that finding.

> **The Court**: That isn't exactly the ruling. I'm not making a ruling at this time that it was fraudulent.
>
> **Puccio**: Well, probable cause to believe that it was a fraudulent transfer . . . one could, I suppose, go to the record and pull scraps from here and there and make such an argument . . .
>
> **The Court:** They are not called scraps; it's called circumstantial evidence.

Id. at 49-51. Thus, the record plainly reflects that Judge Thompson was not making a "finding" as to the Trusts at issue, but, rather, coming to a probable cause determination based on what he viewed as the available evidence.

Equally important to understanding the context in which Judge Thompson made these remarks – a context which Jackson conspicuously omits – is the fact that Judge Thompson informed the parties that the expression of his views about what the evidence would eventually show was not in connection with his ultimate ruling, but were, instead, aimed at persuading the parties to consider settlement. Judge Thompson begins the portion of the hearing -- a portion quoted selectively by the movants -- by stating, "I do have one general observation about this, **and this isn't going to affect how I rule**. With all these lawyers here, running the meter, the way things look to me, there's going to be a conclusion that there were fraudulent conveyances here . . . " PJR Tr. at 50 (emphasis added). Judge Thompson suggested that both sides had issues to consider when he concluded:

> I may order . . . that the parties sit down and try and work out something, because otherwise, we're going to have money that would go to the victim Cendant, be spent on attorneys' fees and we're going to have a lot of . . . **and this is just my opinion** . . . needless worry and aggravation inflicted on Mr. Shelton's family.

Id. at 52 (emphasis added). This portion of the transcript unequivocally shows that, to

7

the extent Judge Thompson opined on what the evidence would eventually show, he did not act as a biased tribunal. Instead, Judge Thompson was simply apprising the parties of his views on the propriety of settlement. Mere suggestions by the court that the parties should settle, even when based on evidence adduced in prior proceedings, do not warrant recusal. See generally Lightfoot v. Union Carbide Corp., 1997 WL 543076 (S.D.N.Y. Sept. 4, 1997), aff'd, 175 F.3d 1008 (2d Cir.1999).

The bulk of Jackson's remaining arguments center on points where Judge Thompson took judicial notice of certain evidence from the Shelton trial and allegations in the United States' civil complaint in United States v. SCIP Partners, Dkt. No. 03:06-cv-1827 (JCH), in order to supplement the PJR hearing record. In one exchange concerning the value of a home Cendant was seeking to attach, Judge Thompson responded to an assertion by defense attorney Hellman that there was no evidentiary basis for concluding that the value of the home was no less than $2.7 million by stating, "if I have to, I'll put something on the record, but I can take judicial notice of a representation by Mr. Shelton." PJR Hearing Tr. at 15. Jackson argues that, in making such statements, Judge Thompson not only "acted as an advocate, but in doing so . . . has improperly drawn from its recollection of evidence presented at the Shelton criminal trial and elevated this recollection to the level of facts capable of being judicially notice." Jackson Mem. at 8.

Once again, context matters. Judge Thompson's conclusion that he could supplement the record by taking judicial notice of certain facts was in no way driven by a deep-seated antagonism formed in the Shelton trial. As the following exchange reveals, Judge Thompson's statements appear motivated, instead, by the defendants'

8

belated attempts to challenge the amounts sought in the PJR application:

> **Court:** If you want to come back and bring some evidence in, you can do that, but it's been months and nobody has --
>
> **Hellman:** Your Honor, we specifically requested a full evidentiary hearing.
>
> **Court**: And I have said you could bring whatever you wanted to bring for this hearing and no one has brought anything. So what I see is delay . . . If you want to move to modify and then come in and bring in some evidence . . . I will be happy to modify the PJR, but at this point I don't see how we can have a good faith dispute as to the valuation of the residence . . .

PJR Tr. at 15-16. Here, Judge Thompson, operating under the belief that there was a probable cause basis to determine the value of the residence in question, simply informed the defendants that he would not longer allow them to submit documentation on this point before he ruled on the PJR application.

Against this backdrop, the movant has failed to establish that Judge Thompson is unable to judge this case fairly, even assuming that Judge Thompson inappropriately took judicial notice of evidence adduced outside the four corners of the Cendant case. Indeed, Jackson's submissions appear even further from the mark considering that whether Judge Thompson was able to take judicial notice of facts adduced from the Shelton trial is at least debatable under Second Circuit law. See, e.g., Iwachiw v. New York State Dept. of Motor Vehicles, 396 F.3d 525, 529 (2d Cir. 2005) ("[W]e have also taken judicial notice that several of the Appellant's prior appeals were dismissed by this Court for frivolousness, failure to comply with the rules or orders of this Court, or lack of appellate jurisdiction.") (quotations and citations omitted).

In any event, it is unnecessary for the court to resolve this legal question here. If Jackson, or any of the parties present at the PJR hearing, had a legitimate basis upon

which to challenge Judge Thompson's reliance on evidence outside the PJR record, their first recourse was to raise a proper objection. The defendants raised no such objection, despite ample opportunity to do so. For example, Judge Thompson indicated early in the December 6 hearing that he could take judicial notice of a representation by Mr. Shelton in valuing a home Cendant sought to attach. See PJR Tr. at 15. Defense counsel Hellman's only response was, "I don't believe that Mr. Shelton will be competent to testify as to that value, your honor. He's not a licensed real estate person." Id. Had any of the defendants objected to Judge Thompson's interpretation of "judicial notice," Judge Thompson could have, if he saw fit, corrected his position. If nothing else, a proper objection would have preserved a record for any available reconsideration or appeal of the issue. Jackson, having failed to lodge a contemporaneous objection, stands on dubious ground by contending now that Judge Thompson's allegedly improper of "judicial notice" is evidence of judicial bias.[7]

In sum, Jackson has not presented, and the transcript of the PJR hearing does not reveal, any reason to believe that Judge Thompson has a personal bias or prejudice against Jackson. The court also finds no basis to conclude that Judge Thompson's ability to preside over this matter might reasonably be questioned, let alone that Judge Thompson harbors a deep-seated favoritism or antagonism that would make it impossible for him to judge this case fairly. Jackson's Second Motion for Recusal (Doc. No. 101) is DENIED.

---

[7] It bears noting that Amy Shelton has moved for reconsideration of the PJR Order (Doc. No. 115), on the ground that Judge Thompson should not have taken judicial notice of facts from the criminal case.

## IV. CONCLUSION

For the foregoing reasons, Jackson's Second Motion for Recusal (Doc. No. 101) is DENIED. The clerk is hereby directed to transfer the case to Judge Thompson.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 27th day of April, 2007.

        /s/ Janet C. Hall
        Janet C. Hall
        United States District Judge